IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| TOMEKA E. SHOCKLEY, : | |
| : | |
| **Plaintiff,** : | |
| : | **5:04CV426 (DF)** |
| vs. : | |
| : | |
| REBOUND, INC. d/b/a/ : | |
| HEALTHSOUTH CENTRAL : | |
| GEORGIA REHABILITATION : | |
| HOSPITAL, : | |
| : | |
| **Defendant.** : | |

**O R D E R**

This matter is before the Court on Defendant's Motion for Protective Order (tab 35). The Court has given due consideration to Defendant's motion, Plaintiff's response, and Defendant's reply. For the following reasons, Defendant's motion is **GRANTED**.

**I.   BACKGROUND**

Plaintiff Tomeka Shockley, proceeding *pro se*, filed this Title VII action against her former employer, Defendant Rebound, Inc. d/b/a/ Healthsouth Central Georgia Rehabilitation Hospital ("Healthsouth"), alleging that she was terminated because of her race. Shockley's suit is based in part on allegations that one of her former co-workers, Mr. Robert Keith Ryals, made racially discriminatory comments to her on

several occasions. Ryals denies having made any such comments. Healthsouth likewise denies having engaged in any racially discriminatory conduct, instead maintaining that Shockley was terminated for falsifying patient records.

Before going to work for Healthsouth, Ryals was employed by the Macon Housing Authority ("MHA") from 1986 to 1992, where his duties included inspecting housing for Section 8 assistance recipients. His work for MHA did not involve any healthcare-related activities. Shockley allegedly learned during the discovery process that MHA terminated Ryals for reasons that "may [be] related to the current proceedings"[1] and that Ryals's position at MHA "afforded him the opportunity for similar misconduct." Pl.'s Resp. to Def.'s Mot. for Protective Order, tab 36, at 3.

Hoping to follow up on this newly learned information, Shockley requested by subpoena a slew of documents relating to Ryals's employment history at MHA. Specifically, the subpoena commanded MHA to produce:

> Any and all documents contained in the personnel or any other files maintained by you on, for or relating to Robert Keith Ryals or Keith

---

[1] Pl.'s Resp. to Def.'s Mot. for Protective Order, tab 36, at 3. Though it is not clear, the Court assumes that Shockley means to suggest by this statement that Ryals was fired from MHA for engaging in racially discriminatory conduct. Ryals's alleged termination from MHA could not literally have related to *these* proceedings, as his employment there ended over a decade before Shockley filed this lawsuit.

> Ryals, including but not limited to any and all applications for employment, resumes [sic], performance reviews, correspondence and/or notes (handwritten or typewritten), disciplinary actions, attendance records, time cards, change of status notices, medical leaves and/or absences, and/or accommodations made to Robert Keith Ryals in his job duties, requirements or positions held, and any and all other documents of any nature contained in any and all such files.

Ex. 1 to Def.'s Mot. for Protective Order, tab 35.

After receiving a copy of the subpoena, attorneys for Healthsouth attempted to resolve this matter without court intervention by writing a letter to Shockley explaining that they did not understand how the requested documents were relevant to the present action. The letter invited Shockley to present a legally sufficient basis for her discovery request.

Shockley responded with a letter to Healthsouth stating that the documents requested in the subpoena, while not necessarily admissible in their own right, would likely lead to the discovery of witnesses who could testify about Ryals's prior misconduct and reputation. She also stated that the information contained in Ryals's personnel file may "possibly show a significant pattern to that [sic] of his alleged behavior in this case." Pl.'s Letter to Def., Ex. 3 to Def.'s Mot. for Protective Order, tab 35. Still convinced that Shockley's subpoena sought undiscoverable information, Healthsouth moved the Court to issue a protective order on September 13, 2005.

Healthsouth argues that Shockley's discovery request is overly broad and unduly burdensome and that the documents she seeks are irrelevant to the issues in this case.  Furthermore, Healthsouth contends that, even if the documents were to lead to the identity of witnesses who could testify about Ryals's reputation or former misconduct, such testimony would be inadmissible at trial under the federal rules of evidence.  Ryals maintains that his privacy interest in the contents of his personnel file outweighs any interest Shockley may have in discovering that information for the purposes of this lawsuit.

## II.   DISCUSSION

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1) (West 2005). To be considered relevant for discovery purposes, "information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id*.  Though broad, a party's right to discovery is not absolute.  The Court "[u]pon motion by a party . . . may make any order which justice requires to protect . . . a person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c) (West 2005).  Such an order may provide "that the disclosure or discovery not be had."  *Id.*  A protective order is

appropriate only where the moving party can establish that there is "good cause" for limiting discovery.

Rule 26's good-cause standard requires the Court to perform a balancing test, weighing the interests of the party seeking discovery against the interests of the party wanting to limit or restrict discovery. *See* ***Chicago Tribune Co. v. Bridgestone/Firestone, Inc.***, 263 F.3d 1304, 1313 (11th Cir. 2001). Shockley has an important interest in gathering factual information relevant to her legal contentions; information which will be necessary for defending against a possible summary-judgment motion or for presenting her case to a jury. Because the information-gathering process serves such a crucial function in developing a case for trial, the rules of evidence are broadly construed to permit discovery not only of information that would be admissible at trial but also of information "reasonably calculated" to lead to the discovery of admissible evidence.

Healthsouth, on the other hand, has an equally strong interest in ensuring that Shockley's discovery requests do not seek irrelevant information and in preventing the discovery process from becoming burdensome and wasteful. Those interests are furthered in part by objecting to requests for information that do not appear to be reasonably calculated to lead to the discovery of admissible evidence. Ryals also has

a strong interest in keeping private any personnel-file documents related to his former employment at MHA.  To ensure that his privacy is maintained, he has joined Healthsouth in seeking the protective order at issue here.

Shockley contends that the documents in Ryals's personnel file are properly discoverable because they will allow her to identify former co-workers of Ryals who can testify at trial about his general reputation and about specific instances of racially discriminatory conduct in which he allegedly engaged.  In support of this position, Shockley cites Federal Rule of Evidence 405.  Rule 405, however, "deals only with allowable methods of proving character, not with the admissibility of character evidence, which is covered in Rule 404."  Fed. R. Evid. 405 (West 2005) advisory committee's note.  Rule 404, in turn, states that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion."  Fed. R. Evid. 404(a) (West 2005). Shockley contends that there is a chance the information contained in Ryals's personnel file might reveal that he engaged in conduct at MHA similar to the conduct he allegedly engaged in while employed at Healthsouth.  But this is precisely the kind of evidence that would not be admissible at trial—*i.e.* Shockley cannot prove her discrimination claim against Healthsouth by presenting evidence

6

that Ryals discriminated against minorities at MHA and therefore likely discriminated against her over a decade later.[2]

Shockley also asserts that the documents in the personnel file are discoverable because "Mr. Ryals' position of housing inspector was a public position." Pl.'s Resp. to Def.'s Mot. for Protective Order, tab 3, at 3. Shockley cites the Georgia Open Records Act ("ORA"), O.C.G.A. § 50-17-70 et seq. in support of this contention, arguing that the contents of Ryals's personnel file are subject to public disclosure. After reviewing the purpose of the ORA and the specific provisions cited by Shockley, the Court concludes that the statute has no application to the facts of this case because the types of documents she seeks to discover do not fall within its ambit.

---

[2] Shockley argues that "Mr. Ryals' file may also be used to impeach any testimony regarding his previous employment with MHA and whether or not he was truthful to Healthsouth regarding his employment history." Pl.'s Resp. to Def.'s Mot. for Protective Order, tab 36, at 3. Use of the file's contents in this manner, however, would be barred by Rule 608(b) of the Federal Rules of Evidence, which prohibits the introduction of extrinsic evidence [*i.e.* documents, records, or the testimony of other individuals] to prove specific instances of a witness's conduct [*i.e.* prior discriminatory behavior] for the purpose of attacking his character for truthfulness. Accordingly, Shockley's attempt to obtain the documents in Ryals's MHA personnel file does not appear to be "reasonably calculated" to yield admissible evidence.

### III.    CONCLUSION

Shockley has requested a large number of documents from Ryals's MHA personnel file. The purpose for which she proposes to use the information revealed by those documents—*i.e.* showing that Ryals had and continues to have a propensity for discrimination—is not permissible under the federal rules of evidence. She has otherwise failed to articulate any way in which the information might be relevant to the particular legal issues to be decided in this case. Therefore, the Court concludes that the subpoena issued to MHA is not reasonably calculated to lead to the discovery of admissible evidence. Healthsouth has thus shown good cause for the issuance of a protective order under Rule 26(c). Accordingly, Defendant's Motion for Protective Order is hereby **GRANTED.**

SO ORDERED, this 25th day of October, 2005.

/s/ **Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/sew